Carolyn R. McDONELL, Administratrix
C.T.A. of the Estate of Edward A. Mc-
Donell, Deceased, Appellant,

v.

NEW ENGLAND MUTUAL LIFE IN-
SURANCE COMPANY et al.,
Appellees.

No. 23993.

United States Court of Appeals
Fifth Circuit.

July 27, 1967.

Rehearing Denied Oct. 4, 1967.

Milton E. Grusmark, Miami Beach, Fla., Sidney Poller, Boca Raton, Fla., for appellant.

Karl Vance Hart, Shutts & Bowen, Miami, Fla., for appellees.

Before BROWN, Chief Judge, SIMP-SON, Circuit Judge, and SUTTLE, District Judge.

SIMPSON, Circuit Judge.

Florida Statute 627.01081, F.S.A. provides:

"Representations in applications—All statements and descriptions in any application for an insurance policy or annuity contract, or in negotiations therefor, by or in behalf of the insured or annuitant, shall be deemed to be representations and not warranties. Misrepresentations, omissions, concealment of facts, and incorrect statements shall not prevent a recovery under the policy or contract unless either:

(1) Fraudulent; or

(2) Material either to the acceptance of the risk, or to the hazard assumed by the insurer; or

(3) The insurer in good faith would either not have issued the policy or contract, or would not have issued it at the same premium rate, or would not have issued a policy or contract in as large an amount, or would not have provided coverage with respect to the hazard resulting in the loss, if the true facts had been made known to the insurer as required either by the application for the policy or contract or otherwise."

Before the enactment of this statute in 1959, the Florida law was unsettled as to the grounds necessary for rescission of insurance contracts for false representations. See Prudential Insurance Co. of America v. Whittington, Fla.App.1957, 98 So.2d 382.

In Douglas v. Mutual Life Insurance Co. of New York, Fla.App.1966, 191 So.2d 483, the first Florida decision expressly

construing the statute, it was the holding that recovery cannot be had under a policy of insurance where the insured made incorrect statements in the application for the policy and the insurer would not have issued the policy had it known the true facts even where the statements were made in good faith. Similar statutes have been construed the same way by courts of other jurisdictions. See cases cited in *Douglas*, supra, at page 485 of 191 So.2d; see also: 45 C.J.S. Insurance § 595, and 7 Couch, Cyclopedia of Insurance Law (1961 2nd Ed.) Sec. 35:24.

On May 31, 1967, a few days before this case was argued here, the Supreme Court of Florida in Life Insurance Company of Virginia v. Shifflet, as Executor, etc., Fla., 201 So.2d 715, in answer to a question certified to it by this Court on January 4, 1967, 370 F.2d 555,[1] announced its decision approving the holding of the Florida District Court of Appeal in *Douglas*, supra.

It is thus now clear that Florida's Supreme Court construes the statute (F.S. 627.01081, F.S.A., supra) to bar recovery for misrepresentations (or incorrect statements) in applications for insurance, regardless of good faith if such misrepresentations are (1) material to the risk or (2) the insurer would not have issued the policy if the true facts had been made known.

The appellant's decedent was issued the policy of life insurance before us by the appellee, in the face amount of $100,-000, on January 19, 1955. The quarterly premium was $1,015.00, due March 19, June 19, September 19 and December 19.

The insured over the years borrowed extensively against the cash value of his policy, so that when the December 19, 1963 premium was not paid, the policy had a cash value of $977.71, $37.29 less than the amount of premium due. The company did not cancel the policy at this time. However, when the March 19, 1964 premium was not paid, the policy was lapsed in due course for non-payment of said premium, and various notices were mailed to the insured relating to the premium due and the lapse of the policy.[2]

An application for reinstatement was executed by the insured on June 15, 1964, and submitted to the Company with the past due premium. The application contained the following questions to which Mr. McDonell gave the indicated answers:

"Question 7—Are you now in good health? Answer—Yes.

Question 8—Have you had any illnesses, diseases or injuries in the past five years? Answer *No.* (If "Yes" complete the following: Nature of illness, disease or injury; date; dura-

---

1. This court originally affirmed *Shifflet* on appeal, 359 F.2d 501, on April 21, 1966. *Douglas* was thereafter decided by the Florida appellate court and on rehearing granted the panel of this court certified the question to the Supreme Court of Florida.

2. On oral argument here, and by supplemental memorandum filed with leave of court, appellant urged strenuously that exhibits produced from the Company files on discovery, and depositions of Company officials with respect thereto demonstrate a conflict as to the cash value of the policy on the date of claimed lapse and hence an unresolved question as to whether lapse actually occurred, and that in this respect there was a "genuine issue of material fact" (F.R.Civ.P. Rule 56) present. We have carefully examined this contention and consider it without

foundation. The confusion primarily arises from Exhibit 3, showing a year-end cash value of the policy on December 31, 1963, of $1615.72. This, says appellant, was $600 more than needed to pay the March 19, 1964 premium of $1,015.00, so that the lapse of the policy by the Company on that date was improper, or at least the discrepancy between Exhibit 3 and other exhibits raises an issue of fact. The fallacy is that the $1615.72 value shown in Exhibit 3, as shown by page 1 of the Exhibit, is based on the assumption that the December 19, 1963 premium would be paid in cash. This was not done, the premium (all except the shortage, $37.29) being paid by application of the automatic premium loan provision of the policy.

This argument will not be further detailed. It is patently without substance.

tion; name and address of attending physician.)"

The Company relied upon the answers given and reinstated the policy on June 29, 1964. It was company policy to accept without independent investigation statements made in an application for reinstatement made within six months from the time of policy lapse.

The insured died on November 17, 1964, and suit was filed in state court claiming the face amount of the policy (less the outstanding policy loan of $22,063.05) on July 21, 1965. The case was timely removed to the court below on grounds of diversity of citizenship.

The appellee answered and filed a counter-claim In the Nature of Interpleader [3] setting forth as an affirmative defense alleged misrepresentations by the insured in his application for reinstatement.

After extensive discovery by both parties, the insurance company's Motion for Summary Judgment was argued. The court below permitted amendment to plaintiff's complaint, asserting additional theories of recovery.[4] After this was filed and answered, a second Motion for Summary Judgment by the appellee was granted. This appeal followed. We affirm, on the basis of the uncontradicted facts shown by the record and the applicable Florida law summarized at the outset of this opinion.

■ Without detailing the facts here, it is sufficient to say that the record before the district judge at the time he granted Summary Judgment for the insurer showed without dispute that McDonell was seriously ill, under almost continuous doctors' care, including two ten-day hospitalizations, for a serious liver complaint and complications therefrom from May 1963 to the time of the application for reinstatement. He was advised several times by his physicians of the gravity of his illness. He re-entered the hospital on July 11, 1964, twelve days after the policy was reinstated. The fatal progress of his disease continued to his death in November 1964 of cancer of the liver following an exploratory operation July 31 indicating cancer of the liver and lungs. It was abundantly clear that the insurer relied upon the statements in the application for reinstatement and would not in good faith have reinstated the policy if the true facts had been made known. It was also clear that the incorrect statements were material to acceptance of the risks.

■ There may be said to be a question of fact present as to whether the admitted misrepresentations were made falsely, with intent to deceive, or were made in good faith. But the resolution of this question was not required. Even if the incorrect statements were made in good faith, the Florida Statute, as interpreted by *Douglas*, supra, and *Shifflet*, supra, barred recovery. In a word, this issue, if assumed to be present, was immaterial. It was not a "genuine issue as to any material fact". (Rule 56, F.R. Civ.P.).

The trial court correctly entered Summary Judgment for the insurer. Its judgment must be, and is, affirmed.

3. Mr. McDonell had executed a change of beneficiary in April of 1962 naming a bank, as Trustee, as beneficiary. Apparently his administratrix claimed the proceeds on the basis of a letter to the bank allegedly terminating the trust written shortly before his death by the decedent. The imminence of conflicting claims was the basis for interpleader. Default judgment was entered against the bank, and no further note need be taken of this feature of the case.

4. Briefly, (1) that no lapse had occurred; (2) that lapse if it occurred was in December 1963, and that the policy had sufficient cash value to purchase automatic term insurance past the date of death; (3) similar to (2) except that the policy terminated in March 1964; and (4) that no proper notice was given by the insurer that the policy was void as of March 19, 1964, and that therefore it remained in force at the date of decedent's death.

As the trial court found, each of these claims was refuted by the undisputed record.