60 F.3d 828
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 NATIONAL CREDIT UNION ADMINISTRATION BOARD, as Liquidator of
Hamtramck Community Federal Credit Union, Plaintiff,
v.
ACACIA NATIONAL LIFE INSURANCE COMPANY, A Virginia
Corporation, Defendant, Third-Party Plaintiff, and
Counter Third-Party Defendant-Appellee,
v.
The ESTATE OF Richard G. Dudek and Mary Ann Dudek,
Third-Party Defendants, and Counter Third-Party
Plaintiffs-Appellants.
 No. 94-1219.
 United States Court of Appeals, Sixth Circuit.
 July 10, 1995.
 
 Before: JONES, CONTIE, and BATCHELDER, Circuit Judges.
 PER CURIAM.
 
 
 1
 Third-party defendants, the estate of Richard G. Dudek and Mary Ann Dudek ("the Dudeks"), appeal the district court's grant of summary judgment to third-party plaintiff, Acacia National Life Insurance Company ("Acacia"). The Dudeks also appeal the district court's denial of their June 1, 1993 motion to file an amended counter-complaint. For the following reasons, we affirm in part and reverse in part.
 
 I.
 
 2
 In 1984, third-party plaintiff, Acacia, issued a life insurance policy (policy 60312204) in the face amount of $350,000 to third-party defendant, Mr. Dudek, which insured his life and named his wife Mary Ann Dudek as the beneficiary. In 1985, Acacia issued another policy (policy 30154009) in the face amount of $304,000 to Mr. Dudek.
 
 
 3
 In 1986, Dudek assigned insurance policy 60312204 to Hamtramck Community Federal Credit Union ("Credit Union") as collateral on a loan to him, Mary Ann Dudek, and Dudek Deli Foods, Inc. The Credit Union was the original plaintiff in the present case, but is not a party to this appeal.[1]
 
 
 4
 Subsequently, Acacia acknowledged the assignment in a letter ("the acknowledgement letter") to the Credit Union, indicating that Acacia would provide notice to the Credit Union upon nonpayment of premiums. In June 1990, Mr. Dudek defaulted in his premium payments. On June 26, 1990, Acacia alleges it sent a notice to Dudek that a 62-day grace period before lapse of the policy had begun and additional payments had to be made to avoid a lapse in the policy. In September of 1990, Acacia alleges it sent an annual report to Dudek indicating that the policy had lapsed. On October 2, 1990, Acacia alleges it sent a letter indicating that the grace period had expired and the policy had lapsed. Acacia did not provide notice to the Credit Union. On October 11, 1990, Mr. Dudek committed suicide.
 
 
 5
 In regard to policy 30154009, Acacia determined that there was an error in Mr. Dudek's age as stated in the policy and accordingly deducted $25,532.33 in the payout to Mrs. Dudek after Mr. Dudek's death.
 
 
 6
 The Credit Union as plaintiff brought suit against Acacia as defendant for recovery of the balance due on the loan out of the life insurance proceeds of policy 60312204 pursuant to the assignment. Acacia refused to pay, stating that the policy had lapsed 62 days after proper and timely notice of default in the premium payments was given.
 
 
 7
 In the lawsuit before the district court, Acacia, as third-party plaintiff, joined Mary Ann Dudek and the estate of Richard Dudek as third-party defendants, alleging in a third-party complaint that the Dudeks were liable to indemnify Acacia in the event Acacia was held liable to the Credit Union. The Dudeks filed a third-party counterclaim against Acacia, alleging that Mr. Dudek was a third-party beneficiary of the acknowledgment letter which stated that Acacia would notify the Credit Union of default. Because Acacia had failed to notify the Credit Union, the Dudeks contended that payment of the proceeds of life insurance policy 60312204 should be made to Mary Ann Dudek. The Dudeks also alleged that there should have been no reduction in the payout under policy 30154009.
 
 
 8
 All parties filed motions for summary judgment and a hearing was held before the district court on April 23, 1993. On May 3, 1993, the district court issued an order permitting the Dudeks to file a motion to amend their third-party counter-complaint against Acacia to assert a direct breach of contract claim under the insurance policy. On June 1, 1993, the Dudeks made a motion to file an amended counter-complaint. The district court in an order of July 9, 1993 denied the Dudeks' motion for summary judgment and granted Acacia's motion for summary judgment in regard to the original third-party counter-complaint, stating that the Dudeks had no claim against Acacia based on a third-party beneficiary theory. The district court also denied the Dudeks' motion to file an amended counter-complaint and granted Acacia's motion to strike the amended counter-complaint.
 
 
 9
 The Dudeks filed a timely notice of appeal of the district court's grant of summary judgment to Acacia and dismissal of their original counter-complaint. They also appealed the district court's denial of their June 1, 1993 motion to file an amended counter-complaint.
 
 II.
 
 10
 Third-party plaintiff-appellee, Acacia, contends that the primary issue which the Dudeks, third-party defendants-appellants, raise on appeal in regard to the district court's grant of summary judgment to Acacia on policy 60312204--that Acacia breached the insurance contract because Mr. Dudek did not receive notice of default in premium payments and the subsequent lapse of the policy--was not raised before the district court below and may not be raised for the first time on appeal.
 
 
 11
 We agree. The Dudeks' original counterclaim against Acacia, indicating that Mary Ann Dudek should be paid the $350,000 due under life insurance policy 60312204, which Acacia alleged had lapsed, is based on a third-party beneficiary theory.[2] Although paragraphs 11 and 15 of the Dudeks' original counter-complaint stated that Acacia failed to give a proper lapse notice to Mr. Dudek, the complaint did not state a direct breach of contract claim, but alleged instead that the Dudeks were third-party beneficiaries of Acacia's contract with the Credit Union, which was created by the assignment and acknowledgment letter. Moreover, at the April 28, 1993 hearing before the district court on the cross-motions for summary judgment, the Dudeks' attorney stated that they were not proceeding under the terms of the life insurance policy itself by alleging a breach of contract claim between Mr. Dudek and Acacia based on the grace-period provision of the policy. The district court advised the Dudeks' counsel that they could file an amended counterclaim setting forth a direct breach of contract claim under the policy and issued an order to this effect on May 3, 1993. However, although the Dudeks filed an amended counter-complaint setting forth a direct breach of contract action against Acacia, the district court subsequently denied their motion to file the amended counter-complaint.
 
 
 12
 We find that a breach of contract theory was not a part of the Dudeks' argument in its original counter-complaint, which was before the court on the cross-motions for summary judgment, and this theory was not argued before the district court during the hearing on the cross-motions for summary judgment. In other words, the Dudeks, in their original counter-complaint, did not contend that Mrs. Dudek was due the money under the life insurance policy because Mr. Dudek did not receive notice of default pursuant to the grace-period provision of the insurance contract, but argued instead that Mr. Dudek did not receive notice pursuant to the acknowledgment letter between Acacia and the Credit Union, based on a third-party beneficiary theory.
 
 
 13
 On appeal, the Dudeks are abandoning their third-party beneficiary theory based on the acknowledgment letter and for the first time are presenting a breach of contract theory based on the grace-period provision of the insurance policy itself. The Dudeks argue that of the three alleged notices that Acacia claims it sent to Mr. Dudek concerning default in premiums and lapse, Acacia has no copy of the first notice sent and the second and third notices were sent to incorrect addresses.
 
 
 14
 We agree with Acacia that the Dudeks are precluded from raising the merits of this argument for the first time on appeal in regard to the district court's grant of summary judgment to Acacia. A party may not advance new theories or raise new issues in order to secure a reversal of the lower court's grant of summary judgment. Issues which are not presented to the district court, but are raised for the first time on appeal, are not properly before the appellate court. Foster v. Barilow, 6 F.3d 405, 408 (6th Cir.1993).
 
 
 15
 The theory of liability the Dudeks raise on appeal--that Mr. Dudek did not receive notice of a default in the premiums because the notices were sent to the wrong addresses--was simply not advanced before the court below. Consequently, the Dudeks may not present this argument for the first time on appeal in regard to the district court's grant of summary judgment to Acacia, dismissing the Dudeks' third-party beneficiary claim contained in the original counter-complaint. The district court's grant of summary judgment to Acacia and dismissal of the Dudeks' original counter-complaint is therefore affirmed.
 
 III.
 
 16
 However, we must also examine whether the district court erred in denying the Dudeks' June 1, 1993 motion to file an amended counter-complaint, which alleged a direct breach of contract claim.
 
 
 17
 Acacia claims that the Dudeks' amended counter-complaint does not state a breach of contract claim. We disagree. Count IV is entitled "Breach of Contract by Acacia." The amended counter-complaint states that Richard G. Dudek did not receive a lapse notice from Acacia, that Acacia did not give notice to Richard G. Dudek, the owner of the policy, of non-payment of premiums, that the records of Richard G. Dudek do not reflect a notice of lapse, and that Acacia failed to advise the Dudeks that the policy of making premium payments and seeking reimbursement in a debtor/creditor relationship would not continue after the death of the agent who sold Mr. Dudek the policy. We find these allegations sufficient to state a breach of contract claim. Moreover, the Dudeks' counsel was specifically told by the district court that they could file an amended counterclaim in order to include a breach of contract claim.
 
 
 18
 Acacia also contends that the Dudeks do not raise the district court's denial of their motion to file an amended counter-complaint on appeal. We disagree. The notice of appeal states that the Dudeks are appealing the district court's denial of their motion to file an amended counter-complaint. In their brief, the Dudeks argue the merits of a direct breach of contract violation and state that the district court erred in denying them leave to amend. In denying them leave to file an amended counter-complaint, the district court stated that the breach of contract claim was futile. The substance of the Dudeks' brief on appeal, in essence, questions the district court's rationale in this regard. Therefore, we find the district court's denial of the Dudeks' motion to file an amended counter-complaint is sufficiently raised to address it on appeal. See Caldwell v. Moore, 968 F.2d 595, 598 (6th Cir.1992).[3]
 
 
 19
 We review the denial of a motion to file an amended complaint under an abuse of discretion standard. Id. at 599. Pursuant to Fed.R.Civ.P. 15(a), where a response to a complaint has been filed, the plaintiff may amend the complaint "by leave of court or by written consent of the adverse party and leave shall be freely given when justice so requires." The Supreme Court has set forth the general standard to be used under Rule 15(a):
 
 
 20
 If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason--such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.--the leave sought should, as the rules require, be "freely given."
 
 
 21
 Foman v. Davis, 371 U.S. 178 (1962). This circuit has addressed the issue of "futility" in the context of motions to amend, holding that where a proposed amendment would not survive a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), the court need not permit the amendment. Thiokol Corp. v. Dept. of Treasury, 987 F.2d 376, 382 (6th Cir.1993); Neighborhood Development Corp. v. Advisory Council on Historic Preservation, 632 F.2d 21, 23 (6th Cir.1980). We believe that in the present case the Dudeks' breach of contract claim could have withstood a motion to dismiss and therefore was not "futile." See United States v. Wood, 877 F.2d 453, 456 (6th Cir.1989) (district court did not abuse its discretion in allowing the government to amend its complaint as the complaint, as amended, could withstand a motion to dismiss under Fed.R.Civ.P. 12(b)(6)); InterRoyal Corp. v. Sponseller, 889 F.2d 108, 112 (6th Cir.1989) (emphasizing that the case law of this circuit manifests "liberality" in allowing amendments to the complaint), cert. denied, 494 U.S. 1091 (1990); Janikowski v. Bendix Corp., 823 F.2d 945, 952 (6th Cir.1987) (although summary judgment entered in defendant's favor on age discrimination claim was affirmed, the denial of the plaintiff's motion to amend the complaint to include a breach of contract claim was reversed). In the present case, the district court stated that the Dudeks' motion to amend must be denied because amendment would be futile because the estate and Mrs. Dudek had produced no evidence of nonreceipt of notice. The Dudeks were given no opportunity to present such evidence. Pursuant to Rule 12(b)(6), the court of appeals must construe the complaint liberally in plaintiff's favor and accept as true all factual allegations and permissible inferences therein. Gazette v. City of Pontiac, 41 F.3d 1061 (6th Cir.1994).[4] Based on this standard, we find that the amended counter-complaint could withstand a motion to dismiss as it stated that Richard Dudek did not receive a lapse notice from Acacia and his records did not reflect a notice of lapse. Therefore, the district court abused its discretion in denying the Dudeks' motion to amend as futile.
 
 
 22
 For this reason, we find the district court erred in denying the Dudeks' motion to file an amended counter-complaint in order to bring a direct breach of contract claim and the case must be remanded to the district court.[5]
 
 IV.
 
 23
 We must finally decide whether the district court erred in determining that Acacia properly reduced its payout under policy 30154009 because of an error in Mr. Dudek's age as stated in that policy.
 
 
 24
 In addition to life insurance policy 60312204, Mr. Dudek was insured upon his death by another Acacia policy, policy 30154009, for $304,000 with Mrs. Dudek as the beneficiary. The counter-complaint filed by the estate of Mr. Dudek and Mrs. Dudek alleged that Acacia improperly deducted $25,532.33 from the amount paid to Mrs. Dudek on this policy after Mr. Dudek's death. Because the policy mistakenly reflected Mr. Dudek's date of birth as 12-5-37 instead of 1-25-37, Acacia calculated the payment amount based on Mr. Dudek's actual age and deducted $25,532.33 from its payout under the policy.
 
 
 25
 Acacia contends that it paid Mrs. Dudek the correct amount on policy 30154009. Because premiums had been calculated on a "one-year-under-estimate" of Mr. Dudek's age, Acacia adjusted the payout based upon his actual age. This age adjustment was made pursuant to Michigan Compiled Laws Annotated (MCLA) Sec. 500.4018, which provides as follows:
 
 
 26
 There shall be a provision that if the age of the insured has been understated, the amount payable under the policy shall be such as the premium would have purchased at the correct age.
 
 
 27
 See Wayside Farms, Inc. v. Hartford Life Insurance Co., 886 F.2d 139 (6th Cir.1989) (despite allegation that insurance agent should have known of age discrepancy, insurance company properly adjusted payout pursuant to Ohio statute).
 
 
 28
 The Dudeks argue that Acacia had actual notice of Mr. Dudek's correct date of birth because it had issued other policies to him with the correct date of birth on them and it was the error of the agent, who issued the policy, which created the mistake in the birth date. The Dudeks argue that because the mistake was caused by the agent's negligence, Acacia should be made to pay for his error.
 
 
 29
 This argument has no merit. The Michigan statute clearly and unambiguously requires that an adjustment be made irrespective of the cause or reason for the age understatement. There is nothing in MCLA Sec. 500.4018 to indicate that the adjustment should be made only in the event that the understatement in age was due to the fault of the insured. See New York Life Insurance Co. v. Hollender, 237 P.2d 510 (CA 1951) (age adjustment clause is deemed fair where adjustments are made irrespective of fault); New York Life Ins. Co. v. Kay, 251 So.2d 544 (Fla.App.1971) (the statute, the provisions of which are mandatory, does not provide for an exception and the misrepresentation is charged to the insured), cert. denied, 225 So.2d 530 (Fla.1971). Moreover, the rationale of this court's decision in Wayside Farms, 886 F.2d at 139, directly rejects the Dudeks' argument. In Wayside Farms, the plaintiff alleged that the insurance agent should have known of the age discrepancy and therefore it was unfair to adjust the payout under the Ohio statute. This court rejected this argument in Wayside, and the Dudeks' similar argument should be rejected in the present case. Mr. Dudek signed the insurance policy and was responsible for correcting the incorrect birth date stated in it. Because there was a misstatement of Mr. Dudek's age in the policy, Acacia properly reduced the payment and paid out an amount under the policy which the premiums would have purchased at the correct age pursuant to MCLA Sec. 500.4018. The district court is affirmed on this issue.
 
 V.
 
 30
 To conclude, the district court is affirmed in part and reversed in part. The district court's grant of summary judgment to Acacia and dismissal of the original counter-complaint is AFFIRMED. In regard to policy 30154009, $25,532.33 was properly deducted due to the misstated birth date in the policy. In regard to policy 60312204, the third-party beneficiary and promissory estoppel claims of the original counter-complaint were properly dismissed. The district court is REVERSED in regard to its denial of the Dudeks' June 1, 1993 motion to file an amended counter-complaint in order to bring a direct breach of contract claim in regard to policy 60312204, and the case is REMANDED for proceedings consistent with this opinion.
 
 
 31
 BATCHELDER, Circuit Judge, concurring in part and dissenting in part.
 
 
 32
 I concur in the majority's opinion except with regard to the denial of the Dudeks's motion to amend. I would affirm the district court as to that motion as well. First, the Dudeks did not raise the intent to file an amended countercomplaint until the hearing on cross-motions for summary judgment. At that April 28, 1993 hearing, the district court explicitly advised counsel for the Dudeks that the Dudeks should file an amended countercomplaint, with the evidentiary support for their claims that they intended to raise in the amended countercomplaint. In its order of May 3, 1993, the district court, among other things, gave the Dudeks until May 12, 1993 to file their motion to amend and their proposed amended countercomplaint. The Dudeks neither timely filed their proposed amended countercomplaint nor timely filed any evidentiary support, although they did file an amended countercomplaint two days late, without leave of court, and they did, later still, request leave to file the motion and proposed amended countercomplaint out of time. I would hold that the district court was well within its discretion to look to the substance of this untimely proposed amended countercomplaint, and to conclude that the Dudeks had produced no evidence that would suffice to withstand summary judgment.[1] Second, I agree with the conclusion of the district court that the Dudeks can state no claim for breach of contract under Michigan law, either because of failure to give notice or because of modification of the policy by Acacia's agent.
 
 
 33
 Accordingly, I would simply affirm the judgment of the district court.
 
 
 
 [1]
 The Credit Union was subsequently placed in conservatorship under the National Credit Union Administration Board ("NCUAB"). NCUAB was then substituted as the plaintiff in this action
 
 
 [2]
 The Dudeks' original counterclaim also included a promissory and equitable estoppel claim, but at the hearing on the motions for summary judgment, the Dudeks informed the court they were abandoning this claim
 
 
 [3]
 In its order of May 3, 1993, the district court gave the Dudeks until May 12, 1993 to file a motion to amend their third-party counterclaim against Acacia. The motion was filed on May 14, 1993. However, the district court did not find that the motion was untimely filed in its decision to deny the motion, nor did Acacia raise this issue on appeal
 
 
 [4]
 We use this standard pursuant to this court's opinion in Thiokol Corp. v. Dept. of Treasury, 987 F.2d 376, 382 (6th Cir.1993) to address the issue of whether the motion to amend was properly denied because of the futility of the amendment. Thiokol states that if a proposed amendment would not survive a motion to dismiss, the court need not permit the amendment. Id. Therefore, we believe that according to Sixth Circuit precedent, we must address whether the proposed claim would be able to withstand a motion to dismiss pursuant to Rule 12(b)(6)
 
 
 [5]
 Those portions of the amended counter-complaint, which merely reiterate the third-party beneficiary and promissory estoppel claims of the original counter-complaint, have been disposed of by the district court's grant of summary judgment to Acacia on these issues, which we affirm. Therefore, on remand, these claims must be stricken from the amended counter-complaint
 
 
 [1]
 Because I would affirm the district court's grant of summary judgment in its entirety, I shall not discuss what I view as the inherent collateral estoppel and res judicata problems in affirming the grant of summary judgment and reversing the denial of the motion to amend